William R. JACKSON, Appellant,

v.

Calvin AUGER, Appellee.

No. 2–58156.

Supreme Court of Iowa.

Feb. 18, 1976.

Mark C. Smith, West Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Earl W. Roberts, Asst. Atty. Gen., Ray A. Fenton, County Atty., for appellee.

Heard by MOORE, C. J., and RAWLINGS, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

McCORMICK, Justice.

This is an appeal from denial of postconviction relief. Petitioner William R. Jackson was convicted and sentenced in 1972 on a charge of going armed with intent in violation of § 695.1, The Code. He did not appeal. In this postconviction action he contends he was denied effective assistance of counsel at his trial contrary to the Sixth and Fourteenth Amendments of the United States Constitution and Article I, § 10, of the Iowa Constitution. The trial court found his contention unmeritorious. We affirm.

Petitioner's claim rests on two grounds. One is an assertion his attorney had an impermissible conflict of interest because he was also representing an alleged accomplice whose case was still pending on appeal. The other is an assertion he was inadequately advised and assisted regarding perfecting an appeal. He has been resourcefully and diligently represented by able counsel in this postconviction action.

The only witnesses in the postconviction hearing were petitioner and his trial counsel, Raymond G. Gazzo. Petitioner testified he was originally represented successively by William Davis and Roger P. Owens. His case was pending trial eight or nine months. Petitioner was admitted to bail during that period. About a week or week and one-half before trial was scheduled, Owens entered the Polk County Offender advocate's office and withdrew as defendant's lawyer. Attorney Gazzo was then appointed to represent petitioner. Petitioner testified his only contacts with Gazzo before trial consisted of two telephone conversations and a meeting the day before trial.

Petitioner said he mentioned to Gazzo the question of his intoxication at the time of the alleged offense and knew of witnesses who might testify on that issue. He said he did not know whether Gazzo talked to those

persons. He testified Gazzo told him he had represented Fred Ware, an alleged accomplice in the incident, in his earlier trial. Ware had been convicted and his case was pending on appeal at the time petitioner was brought to trial. Petitioner said there was no discussion about calling Ware as a witness for him.

Shortly before trial petitioner sought a change in lawyers. His expressed reason was that he and Gazzo had not had enough time together before the case was scheduled to be tried. The trial judge refused to permit a last minute change in court-appointed counsel.

Petitioner, upon advice of attorney Gazzo, elected not to testify in his own defense. He was found guilty and sentenced. After sentencing he discussed the question of appeal with Gazzo. He testified that he and his wife directed Gazzo to perfect an appeal for him but Gazzo failed to do so. He said Gazzo told him an appeal would have no merit.

Attorney Gazzo testified he had become familiar with the Jackson case when he was appointed to represent Ware in November 1971. He said he discussed it with attorney Davis while preparing for the Ware trial which occurred in February 1972. Ware did not testify in his own trial. His case was defended on a theory he could not be identified as a participant in the offense. He was convicted and sentenced. An appeal was taken on a claim the trial court erred in overruling a defense motion for mistrial. This appeal, later successful, *State v. Ware*, 205 N.W.2d 700 (Iowa 1973), was pending at the time petitioner was tried. The Ware appeal was decided March 28, 1973.

After the Ware trial Gazzo was consulted by attorneys Davis and Owens as they prepared for petitioner's trial. It was at Owens' suggestion that Gazzo was appointed to represent petitioner when Owens withdrew.

Gazzo testified regarding trial preparation. He said he knew what evidence was available from his experience in represent-

ing Ware. He discussed trial strategy with petitioner. He said he had explored the intoxication defense in his discussions with petitioner's prior counsel and had rejected it. He believed petitioner would have more to lose by taking the stand in support of an intoxication defense and exposing himself to cross-examination than he would expect to gain. He also said he did not call Ware to testify in petitioner's trial because he did not believe Ware could offer any testimony which would be helpful to petitioner. In fact, he believed any testimony by Ware would adversely affect petitioner's case. He testified petitioner did not object, make any contrary suggestions about trial strategy or complain about his representation to him at any time. He denied a conflict of interest. In fact, he contended his prior experience in the Ware trial was a positive advantage in representing Jackson.

Gazzo acknowledged discussing the question of appeal with petitioner and later petitioner's wife after petitioner was sentenced. He said he advised them candidly he thought an appeal would be without merit, and he insisted he was not asked to take an appeal in the case. He said he would have pursued an appeal if he had been directed to do so.

The postconviction court found against petitioner's contention. The court found Gazzo had competently and ably represented petitioner at trial and also found from the evidence that petitioner "at no time told Mr. Gazzo that he wanted to appeal his conviction to the Supreme Court". The court concluded petitioner's claim of denial of effective representation was without merit and dismissed the petition.

■ Since petitioner has alleged a violation of a basic constitutional safeguard, his right to counsel, we make our own evaluation of the totality of the circumstances under which the postconviction court's ruling was made. *Hightower v. Peterson*, 235 N.W.2d 313, 316–317 (Iowa 1975).

Content:

I. *Dual representation.* Dual representation occurs when persons jointly charged are represented by the same lawyer. *State v. Gatewood*, 179 N.W.2d 520, 521 (Iowa 1970). In the present situation, even though petitioner and Ware were not tried together, they were jointly charged and during the time attorney Gazzo represented petitioner he still represented Ware. This was dual representation. *United States ex rel. Clark v. Guy*, 386 F.Supp. 1175 (E.D.Pa.1974).

We have previously attempted to discourage dual representation. *State v. Gatewood*, 179 N.W.2d 520 (Iowa 1970); *State v. Karston*, 247 Iowa 32, 72 N.W.2d 463 (1955). We have done so in a desire to prevent counsel from being placed in a position where a conflict of interest may arise. The present case illustrates that our admonition has not been effective to eliminate the practice. See also *State v. Donohue*, 207 N.W.2d 750 (Iowa 1973). We note once again that the risks involved in dual representation ordinarily outweigh any imagined advantage in appointing the same lawyer to represent defendants jointly charged. See, e. g., *Janvrin v. Haugh*, 171 N.W.2d 275 (Iowa 1969). Nonetheless, we must also once again decide whether dual representation denied a defendant his right to effective representation.

It does not automatically do so. The burden is upon the defendant to demonstrate a substantial possibility that the situation of dual representation created a conflict between his interests and the interests of the other person or persons represented. Actual prejudice need not be shown. *Glasser v. United States*, 315 U.S. 60, 71, 75–76, 62 S.Ct. 457, 465, 467–468, 86 L.Ed.2d 680, 700–702 (1942); *Foxworth v. Wainwright*, 516 F.2d 1072, 1079 (5 Cir. 1975); *United States ex rel. Hart v. Davenport*, 478 F.2d 203, 210 (3 Cir. 1973). *Lollar v. United States*, 126 U.S.App.D.C. 200, 376 F.2d 243, 246–247 (1967); *State v. Donohue*, supra, at 751; *State v. Gatewood*, supra, at 523.

In this case we find petitioner has not met this burden. A possibility of prejudice from dual representation existed. If it appeared defense strategy in petitioner's case might be affected by the fact Gazzo still represented Ware, such possibility would be substantial. *Foxworth v. Wainwright*, supra, at 1079; *Austin v. Erickson*, 477 F.2d 620, 624 (8 Cir. 1973). Here, however, Ware had not testified in his own trial. His theory of defense was a denial of participation. His appeal was pending. A retrial was possible if his appeal succeeded. It is unrealistic to suggest that any lawyer representing petitioner at the time Gazzo represented him would have had the option of calling Ware as a witness in petitioner's behalf. Furthermore, we have no reason to doubt Gazzo's statement that Ware's testimony would have been unfavorable to petitioner. In addition, we find no substantial possibility existed that petitioner was foreclosed the benefit of an intoxication defense by reason of the dual representation. Petitioner himself indicated that if such a defense were to be offered his own testimony and that of other witnesses was available on the issue. Significantly, petitioner did not contend in his postconviction hearing that he or anyone else would have testified he was intoxicated at the time of the offense charged.

We hold petitioner was not denied effective counsel on this ground.

II. *Failure to appeal.* Our independent evaluation of the record leads us to the same conclusion as the postconviction court regarding petitioner's claim that his counsel failed to protect his right to appeal. We find petitioner was fully advised of his appeal rights by the trial court and by attorney Gazzo. He and his wife also discussed the possible merits of an appeal with Gazzo. After having done so, we find neither petitioner nor his wife directed or requested Gazzo to pursue an appeal.

It occurred to the postconviction court that petitioner became interested in an ap-

peal only after Ware's appeal, which was on a ground not present in petitioner's case, was successful and upon remand Ware received probation after a plea-bargained guilty plea. The chronology of events and realities of human nature lend some support to this conclusion.

Independent of this, we find petitioner made a fully informed decision not to take a direct appeal.

We hold he was not denied effective counsel on this ground either.

No reversible error appears.

Affirmed.